Filed 10/8/24  P. v. Robinson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B334026 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA008895) |
| v. | |
| ERIC FRANK ROBINSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed.

Benjamin Owens, under appointment by the Court of Appeal; Eric Frank Robinson, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

Eric Frank Robinson appeals from a postjudgment order denying his petition for resentencing under Penal Code[1] former section 1170.95 (now section 1172.6) as to his 1994 conviction for felony murder. The superior court found Robinson was ineligible for resentencing relief as a direct aider and abettor, or in the alternative, as a major participant who acted with reckless disregard for human life.

We appointed counsel to represent Robinson in this appeal. After reviewing the record, Robinson's appointed appellate counsel filed a brief that did not identify any arguable issues. After independently reviewing the record and the contentions presented by Robinson in his two supplemental briefs, we have not identified any either. Therefore, we affirm the order denying the petition for resentencing.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*

We summarized the evidence at trial in our opinion in *People v. Robinson* (May 17, 2022, B312651) (nonpub. opn.):

"[Roberta] Brooks and Robinson were involved in a fraudulent scheme to obtain student loan funds. They recruited individuals to lend their names to false student loan applications to attend a trade school. When the student loan was approved, Robinson would receive the check at the school. The check was then given to the 'student' to cash and the proceeds distributed among the various individuals involved in the scheme. Besides Robinson and Brooks, participants in the scheme included James

---

[1]     Further statutory references are to the Penal Code.

2

Coulter, two sisters, Denisa and Latisha Jones, and J'Neane Griffie.

"Griffie recruited Rachel Jones to act [as] an applicant for a student loan. When Robinson received a $4,000 loan check payable to Rachel he instructed her to cash the check and bring the proceeds to him at a motel room. Rachel, accompanied by Griffie, cashed the check but before the two women could get to the motel they were robbed. Griffie called the motel room to report the robbery and spoke to Denisa who was waiting there for the money along with Latisha, Coulter, Robinson and Brooks. Denisa told Griffie and Rachel to come to the motel to explain what happened.

"When Griffie and Rachel arrived at the motel room, Robinson met them at the door with a gun in his hand. He grabbed the women, threw them to the floor and started hitting them with wire coat hangers shouting 'Where's the money?' Griffie told Robinson she and Rachel had been robbed. Latisha, who lived in the motel room, told Robinson and Coulter to leave because she was afraid someone might call the police.

"After Robinson and Coulter left, Latisha and Denisa told Griffie and Rachel the men had stripped them and taken their jewelry. They wanted Griffie and Rachel to go with them to find Robinson and Coulter and get their jewelry back.

"The four women and Brooks got into two cars and drove off to find Robinson and Coulter. After driving around, they learned Robinson and Coulter were at a motel in Lynwood. The women went to the motel room. Once inside, the four women were forced to engage in various sex acts with each other and Robinson, Coulter, and Brooks. Robinson and Coulter then allowed Denisa and Latisha to leave, and the men told Griffie and Rachel to get

3

dressed.  Coulter gave his gun to Brooks and told her to watch Griffie and Rachel while he talked to Robinson.  Brooks pointed the gun at Griffie and Rachel and asked if they loved each other and whether they were ready to die.  Coulter then told Griffie and Rachel to forget what had happened in the motel room and not to go to the police.  Griffie and Rachel promised to obey his instructions.  Robinson led Griffie outside while Brooks continued to guard Rachel.

"Brooks gave the gun to Robinson, and Brooks cleaned the room of fingerprints and other evidence.  Brooks, Robinson, and Rachel then left the hotel room and walked to Robinson's car.  Coulter was already sitting in the front passenger seat, and Griffie was in the back seat.  Robinson and Brooks pushed Rachel into the trunk and closed it.  Robinson drove away, with Brooks and Coulter in the front seat and Griffie in the back.  Robinson started to drive toward Latisha's motel, but Coulter pointed or gestured with the gun at Robinson and directed Robinson to drive in a different direction.

"After driving for some time, Robinson stopped the car in a dark, vacant lot in Compton.  Robinson let Rachel out of the trunk and said in a kind voice, 'Come on with me, honey:  Don't worry about nothing.'  Rachel pleaded for her life, but Robinson told her to kneel down.  Robinson then brought Griffie over and told her to kneel next to Rachel.  While Rachel was starting to pray, Coulter shot her.  Then Griffie started screaming, and Coulter shot her.  The two men and Brooks drove away.  Griffie died of a gunshot wound, but Rachel survived."

B.    *The Verdict and Appeal*

The jury convicted Robinson of the first degree murder of Griffie (§ 187), the attempted murder of Rachel (§§ 187, subd. (a), 664), and multiple sex crimes. The jury found true the special circumstance the murder was committed in the commission of a kidnapping (§ 190.2, subd. (a)(17)). The jury also found true as to the murder and attempted murder counts that Robinson was armed with a firearm (§ 12022, subd. (a)(1)). The jury convicted codefendant Brooks of rape and other sex crimes.

On appeal, we reversed the kidnapping special circumstance and otherwise affirmed the judgment as to Robinson. (*People v. Brooks* (Dec. 23, 1996, B085183) [nonpub. opn.].) In reversing the special circumstance, we concluded, "The one reasonable inference is that while in the motel room Robinson and Coulter formed the intent to kill Griffie and Rachel and transporting them to an isolated location was 'merely incidental' to the murder." In 2017, on remand, the superior court sentenced Robinson to 26 years to life in state prison. (*People v. Robinson, supra*, B312651.)

C.    *Robinson's Petition for Resentencing and the Superior Court's Summary Denial*

On March 22, 2021 Robinson, representing himself, filed a petition for resentencing and supporting declaration seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Robinson declared his "first degree murder conviction was based on a theory of felony murder and/or a theory of murder under the natural and probable consequences doctrine" and he "could not now be convicted of first or second

5

degree murder because of the changes made to Penal Code sections 188 and 189, made effective on January 1, 2019, pursuant to Senate Bill 1437." He stated he was not the actual killer and did not act with the intent to kill. Further, he was not a major participant in the felony or did not act with reckless indifference to human life. Robinson requested the superior court appoint him counsel. Robinson attached multiple exhibits to his petition, including the felony complaint and the verdict form on the murder count.

On April 26, 2021 the superior court summarily denied the petition without appointing counsel for Robinson, finding Robinson was not eligible for relief as a matter of law. The court relied on our opinion in *People v. Brooks*, *supra*, B085183, explaining we found the evidence "was sufficient to support a finding of specific intent to kill." The court noted that on appeal we found Robinson and Coulter had a motive to kill Griffie and Rachel, and it cited our finding in the context of the kidnapping special circumstance that "the one reasonable inference" was that in the motel room Robinson and Coulter formed the intent to kill Griffie and Rachel.

We reversed. (*People v. Robinson, supra*, B312651.) We found the superior court erred in relying on this court's prior opinion to conclude Robinson was necessarily convicted as a direct aider and abettor or of felony murder based on a theory he was a major participant in the kidnappings and sex crimes and acted with reckless indifference to human life. We also found it was error for the trial court to deny Robinson's petition for resentencing without first appointing counsel. We remanded the matter for the trial court to appoint counsel for Robinson and issue an order to show cause. (*Ibid.*)

6

D.    *Denial of Robinson's Petition For Resentencing After an Evidentiary Hearing*

The superior court on remand appointed counsel for Robinson and ordered the People to file a response to the petition. In opposition, the People argued Robinson was ineligible for relief as a matter of law because he "would still be found guilty beyond a reasonable doubt as an aider and abettor to a first degree murder and attempted murder" and that he "was both a major participant and one who acted with reckless indifference." Robinson filed a response arguing the verdict did not preclude him from relief because the jury instructions did not support a finding he acted with malice.

At the evidentiary hearing on September 26, 2023, the parties relied on only the trial testimony. Counsel for Robinson argued "there aren't any real facts that address whether Mr. Robinson was a direct aider and abettor" in the murder and attempted murder, and the testimony at trial showed "he did not know Mr. Coulter was going to kill these individuals." Rather, according to counsel, Robinson "was in fear for his life. He had a gun pointed at him as well, [and] if he did not follow Mr. Coulter's directions, he would be shot and killed."

The superior court denied the petition, finding, "This case doesn't start when the two victims were shot. It starts way before that. . . . [¶] When the parties are talking about the travel school and the student loans. At that time, at the Travelodge, the defendant, Mr. Robinson, had a gun. And at that time, he hit the victim Rachel in the head and also struck her with a coat hanger. [¶] He was responsible for getting rooms at that location. . . . He sexually assaulted victim Rachel. . . . [W]hile he was doing this, at times, he had the gun in his hands. . . . [¶] Then we have the

shootings. . . . They were driven to a location. Mr. Robinson took victim Rachel out of the car and forced her to kneel on the ground. Then he took victim Griffie out and onto the ground and forced her to kneel on the ground. [¶] Then at some point, victim Rachel pleaded for her life. Mr. Robinson said, 'We don't know why you're saying that for.' And then Coulter shot both of them."

The trial court concluded that "clearly Mr. Robinson is an aider and abettor. I don't think it is a close call. Even if you don't find he's an aider and abettor, at minimum, he's a major participant and showed reckless disregard for human life. I don't think it's a close call." Robinson appealed.

## DISCUSSION

We appointed counsel to represent Robinson on appeal from the denial of his postjudgment petition. After reviewing the record, appointed counsel did not identify any arguable issues and so informed this court. Appointed counsel advised Robinson on July 29, 2024 that he was filing a brief stating he was unable to find any arguable issues and that Robinson could personally submit any contentions he believed the court should consider. Counsel also sent Robinson a copy of his appellate brief and the record on appeal.

On August 26, 2024 we received a typed nine-page supplemental brief from Robinson, which included 47 pages of exhibits. Robinson argued in his supplemental brief that the superior court violated the ex-post facto clause on January 31, 2017 by improperly imposing a 15 percent custody credit limitation on his entire determinate sentence (applicable only to violent felonies) instead of awarding 50 percent custody credits.

8

Robinson also claimed the July 25, 2018 amended abstract of judgment improperly imposed a one-year firearm enhancement on the murder count and the trial court failed to re-impose the firearm enhancement on the attempted murder count in the amended abstract.[2] Finally, Robinson asserted the 2018 amended abstract of judgment incorrectly calculated his custody credits.

On September 20, 2024 we received an additional four-page supplemental brief from Robinson.[3] In his brief Robinson argued he "was 23 years old on 9/28/1991, the day the criminal offenses occurred [and] [t]here is no evidence in the record, which this court has that the superior court considered appellant's youth as a factor when it denied the petition for resentencing." According to Robinson, the failure to consider Robinson's youth requires a new evidentiary hearing.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v.*

---

[2] On January 16, 2019 we granted Robinson's petition for habeas corpus to strike the one-year firearm enhancement (§ 12022, subd. (a)(1)) imposed on the murder count because the firearm enhancement had already been imposed for the attempted murder count. (*In re Robinson* (January 16, 2019, B292869); *see People v. Miles* (1996) 43 Cal.App.4th 364, 370, fn. 6.) The trial court issued an amended abstract of judgment on March 26, 2019.

[3] We granted Robinson's request to consider his additional brief.

9

*Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) Under section 1172.6, a defendant convicted of felony murder or murder under the natural and probable consequences doctrine can challenge the defendant's murder conviction if he or she "makes a 'prima facie showing' of entitlement to relief. . . . This, in turn, requires a showing that, among other things, he 'could not presently be convicted of murder' under the amendments to the murder statutes that became effective on January 1, 2019." (*People v. Arreguin* (2023) 89 Cal.App.5th 58, 62; see *Strong,* at p. 708. "Senate Bill No. 1437 did not *change* the law to prohibit direct aider and abettor liability on an imputed malice theory." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936.)

Section 1172.6, however, does not allow a petitioner to raise a new argument that is not based on changes made by Senate Bill 1437. (See *People v. Burns* (2023) 95 Cal.App.5th 862, 865 ["Section 1172.6 does not create a right to a second appeal."].) Thus, "[t]he mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) Accordingly, to the extent Robinson's supplemental brief challenges the trial court's calculation of custody credits and imposition of a firearm enhancement, these arguments are not properly raised in this appeal because neither argument shows Robinson "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1172.6, subd. (a)(3).)

Moreover, Robinson has not shown he is entitled to a new evidentiary hearing based on the trial court's asserted failure to consider his youth.  Although youth is a relevant factor for a court to consider at a resentencing hearing (see *People v. Pittman* (2023) 96 Cal.App.5th 400, 418), there is no evidence in the record of Robinson's age at the time of the incident.  Even if Robinson was 23 years old, no evidence was presented to show that his relative youth affected his ability to appreciate the risks and consequences of his behavior.  (*People v. Oliver* (2023) 90 Cal.App.5th 466, 489 ["we are not here presented with a situation where a youthful offender was swept up in circumstances beyond his or her control that led to an unintended death"]; see *People v. Mitchell* (2022) 81 Cal.App.5th 575, 595 ["Youth can distort risk calculations.  Yet every 18 year old understands bullet wounds require attention.  The fact of youth cannot overwhelm all other factors."].)

Because no cognizable legal issues have been raised by Robinson's appellate counsel or by Robinson or identified in our independent review of the record, the order denying his petition for resentencing is affirmed.  (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 231-232; see generally *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende* (1979) 25 Cal.3d 436, 441-442.)

## DISPOSITION

The order denying Robinson's petition for resentencing is affirmed.

FEUER, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.